UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE UNITED STATES AND CANADA, AFL–CIO,

v.

INTERNATIONAL MAINTENANCE COMPANY.

No. CIV.A. 02–CV–635.

United States District Court, M.D. Louisiana.

Feb. 12, 2003.

Louis L. Robein, Jr., Robein, Urann & Lurye, Metairie, LA, for Plaintiffs.

William R. D'Armond, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for Defendants.

### RULING ON MOTION TO ALTER OR AMEND JUDGMENT [1]

JOHN V. PARKER, Chief Judge.

Defendant, International Maintenance Company, L.L.C. ("the Company"), moves this court (doc. 34) to reconsider its October 25, 2002 denial of defendant's motion for summary judgment and its grant of motions to confirm contractual grievance award and for summary judgment by plaintiff, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO ("the Union") (doc. 33). Specifically, the Company requests a

---

1. The Company erroneously refers to its motion as one for reconsideration.

ruling that the Committee's decision was timely appealed to arbitration and that it remains open for arbitration. Plaintiff opposes defendant's motion (doc. 37).

## ARGUMENTS

The Company argues that the collective bargaining agreement at issue does not specify with whom the appeal to arbitration must be filed and that this court's October 25, 2002 ruling was not clear on the matter. Specifically, the Company reads the ruling to mean that the appeal to arbitration should have been filed with either the "Impartial Arbitrator" or the United States Mediation and Conciliation Service. The Company argues that both are erroneous.

First, the Company throughout argues that at the time the General Presidents' Committee's decision is rendered and during Step III's ten day appeal period, there is no "Impartial Arbitrator" with whom the appeal may be filed.[2] The Company argues that in order for an Impartial Arbitrator to be appointed, the parties must request a list of potential arbitrators from the United States Mediation and Conciliation Service (pursuant to Step IV). The parties then alternately strike names from the list until a single name remains. According to the defendant, the selected person is notified of his appointment either by the parties or by the United States Mediation and Conciliation Service, he may accept or decline, and only upon his acceptance does an Impartial Arbitrator exist.

Second, the Company argues that the agreement does not require an appeal to the United States Mediation and Conciliation Service, declaring that the Mediation and Conciliation Service does not act as a recipient of appeals, nor is it an arbitrator; rather, it mediates labor disputes and provides private arbitrator lists from which the parties select an arbitrator. According to the Company, the appeal requirement and the requirement to apply to the United States Mediation and Conciliation Service are separate—the appeal requirement is found in Step III and the United States Mediation and Conciliation Service provision is found in Step IV. Step IV gives the parties five days after the appeal is filed to apply to the United States Mediation and Conciliation Service. The Company argues that it would make no sense to label the United States Mediation and Conciliation Service application the "appeal" if such application comes subsequent to the appeal.

The Company argues that because the contract does not specify with whom an appeal to arbitration is to be filed and because neither an Impartial Arbitrator nor the United States Mediation and Conciliation Service are possibilities, it is proper to file the notice of appeal with the Committee's Administrator.[3] The Company argues that the Administrator (Kaczorowski) is the agent of the Committee and thus, agent of the signatory unions. When the Company wants to appeal, the Company argues that the signatory unions and

---

**2.** Though the language of the agreement states that either party may appeal within ten days "to an Impartial Arbitrator," the Company cites Fed.R.Civ.P. 3(a)(1) for the proposition that the term "appeal to" does not necessarily mean that the appeal must be filed "with" the appellate forum. As this ruling notes, infra., reference to the Federal Rules of Civil Procedure is not an appropriate tool with which to construe this collective bargaining agreement. "Appeal to" does not necessarily mean "perfect an appeal" to a

higher court. "Either party," means either party, if aggrieved, may appeal.

**3.** The court respects the Company's argument, but is compelled here to cite clear Step III language: "In the event that the affected Union or Contractor does not accept the decision of the General Presidents' Committee, either party may appeal within ten (10) days *to an Impartial Arbitrator.*" The Committee's Administrator is neither an arbitrator nor, significantly, is he the *source* for arbitrators.

the Administrator (as their agent) are the only parties to notify of the appeal. Moreover, according to the Company, notice to the Administrator amounts to notice to the other signatories (in whose favor the labor contract is administered).

Here, the Company argues that the appeal was properly and timely filed with the Administrator. The Company suggests that events subsequent to October 10 show the Union's acknowledgment of a properly-filed appeal as well as a waiver of any objections to arbitrability. Thereafter, application to United States Mediation and Conciliation Service was a joint obligation of "the parties" and not of the appealing party.[4] After the timely appeal to the Administrator, the Company argues, both parties were jointly at fault for the failure to apply to the United States Mediation and Conciliation Service for a list of arbitrators within five days. The Company insists that failure to apply to the United States Mediation and Conciliation Service was not grounds for forfeiture of the grievance and that the matter remains arbitrable.

The Union first argues that Fed. R.Civ.P. 59(e) motion for reconsideration is an extraordinary remedy which courts should use sparingly. Such remedy is unnecessary here, according to the Union, since the need to bring the litigation to an end outweighs the need to render just decisions based on all of the facts. Moreover, a Rule 59(e) motion is argued to be inappropriate for relitigating old matters that have been resolved to the Company's dissatisfaction, for raising new arguments, or for submitting evidence that could have been presented prior to judgment. The Union argues that the Company has failed to show more than mere disagreement with this court's prior reading of the collective bargaining agreement and resultant ruling.

Specifically, the Union argues that the Company advances its original argument, namely, that Guitreau's second October 10 letter to Kaczorowski constituted a proper appeal for purposes of Step III and that the Company had no individual obligation to apply to the United States Mediation and Conciliation Service. However, according to the Union, there is nothing in the agreement or the record establishing that the Administrator is the Union's agent for purposes of appeal or that submission of a letter to the Administrator represents compliance with Step III. The Union submits that the Step III losing party seeking to appeal to Step IV arbitration is expected to notify the opposing party of the appeal and to take the initiative to secure United States Mediation and Conciliation Service-sponsored arbitration without the involvement of the Administrator's office.[5] In sum, the Union argues

---

4. Step IV, No. 1 reads: "Within five (5) days after the grievance has been referred to Step IV, *the parties* shall apply to the United States Mediation and Conciliation Service for the services of an Arbitrator...."

5. The Union argues that Kaczorowski's declaration supports this contention. His declaration states that "[i]f a party receives an unfavorable decision at any Step in the procedure, that party bears the burden of moving the grievance to the next Step in the procedure or abiding by the decision. In the specific Step III/IV context, a party that has lost before the General Presidents' Committee at Step III, and that seeks to appeal to Step IV arbitra-

tion, will formally state its intent to appeal to arbitration and thereafter take the initiative to secure United States Mediation and Conciliation Service-sponsored arbitration." Kaczorowski goes on to declare that "[a]s a general and customary matter, if the party that has lost at the Committee level chooses to exercise its right to appeal the Committee's decision to impartial arbitration, it will so notify the other party, and the parties will proceed to arbitration, at the losing party's initiative, *without further involvement from the Administrator's office.* The appealing party will usually notify the Administrator of its decision

that the Company neither offered timely notice of appeal nor did it make any effort to secure United States Mediation and Conciliation Service-sponsored arbitration.

According to the Union, the court's original ruling provided a reasonable construction of Step III. Moreover, the Union argues that Step IV's obligation on "the parties" to apply to the United States Mediation and Conciliation Service belongs to the aggrieved party, a view consistent with the record and with actual practice under the agreement. Even though the Company lost at the Committee level, the Union argues that the defendant claims to have only one independent, affirmative obligation regarding an appeal to arbitration—to write a letter to the Administrator who is neither an Impartial Arbitrator nor a representative of the Union. Subsequent to this alleged appeal, the Union argues that by characterizing the obligation to initiate arbitration as "joint," the Company can effectively paralyze the arbitration process by refusing to act, but because of a timely notice of appeal to the Administrator, can claim that the Committee's decision is not binding.

## DISCUSSION

The disputed provisions of the collective bargaining agreement read as follows:

1. All grievances that may arise on any work covered by this Agreement must be filed within five (5) working days after the occurrence of events giving rise to the grievance, and shall be handled in the following manner:

*Step 1:*

Between the aggrieved employee and/or the on-site Representative and the employee's immediate on-site Staff Supervisor. It is understood that the on-site Representative shall have permission to phone the office of the Administrator of the General Presidents' Maintenance Committee for guidance in any situation that may arise during working hours. On grievances involving disciplinary action against employees or disputes relative to local wages and fringe benefits applicable under this Agreement, a representative of the Local Union shall be included in Step I.

*Step II:*

Between an International Union Representative and the Labor Relations Manager of the Contractor.

*Step III:*

1. If the grievance is not satisfactorily settled within five (5) working days after the start of Step II, the information prepared for Step II plus any other supplemental information, facts, or positions developed in Step II shall be submitted in wiring [sic writing] to the General Presidents' Committee within five (5) days.

2. The General Presidents' Committee shall render its decision with[in] ten (10) days after receipt of the grievance from Step II. In the event that the affected Union or Contractor does not accept the decision of the General Presidents' Committee, either party may appeal within ten (10) days to an Impartial Arbitrator.

*Step IV:*

1. Within five (5) days after the grievance has been referred to Step IV, the parties shall apply to the United States Mediation and Conciliation Service for the services of an Arbitrator in accordance with established rules of said services. The Impartial Arbitrator shall only have jurisdiction and authority to determine the meaning, application of, or compliance with the provisions of this

to proceed to arbitration, but it is not required to do so."

Agreement and shall not have jurisdiction or authority to add or detract from or alter in any way such provisions.

2. In arbitration proceedings, the expenses of the Impartial Arbitrator shall be shared equally by the parties.

3. The findings of the Arbitrators shall be binding on both parties.

The provisions of this contract, particularly as to how one gets from *Step III* to *Step IV* of the grievance procedure, are not a model of clarity.[6]

General rules of interpretation are that a contract should not be construed so as to produce an absurd result and that it should be construed in accord with the overall intent of the parties. It is beyond dispute that the parties to this contract intended to set up a grievance procedure that would accomplish at least two objectives: (1) to establish a quick and informal process for resolving grievances; and (2) to keep the process out of court. Accordingly the court should not ascribe the legalese of Black's Law Dictionary to phrases such as "either party may appeal within ten (10) days to an Impartial Arbitrator," and "within five (5) days after the grievance has been referred to Step IV, the parties shall apply ..." Fed.R.Civ.P. 3(a) has no application here.

Despite some confusing language, some matters are plain from the contract. They include:

(1) The procedure is informal;

(2) The procedure moves rapidly from one step to another to final resolution, without court involvement;

(3) If the grievance is not resolved at the third step it may move to binding arbitration;

(4) The source for providing an "Impartial Arbitrator" is the United States Mediation and Conciliation Service.

From these provisions it is clear that someone must make a request (an "appeal") to the Mediation and Conciliation Service for provision of such an arbitrator. To construe this contract so as to require that a party who is entirely satisfied with the Step III result make such a request (or "appeal") on behalf of the dissatisfied opposing party would indeed produce an absurd result. To say that the dissatisfied party has no time limit within which to demand that his opponent perfect the "appeal" is equally absurd, as is the notion that the Company here has unlimited time within which to demand an arbitration.

This court is completely convinced that under the terms of this contract, the party who is not content with the Step III result has the burden of making a request ("appeal") to the Mediation and Conciliation Service for an "Impartial Arbitrator" to review the dispute. It is undisputed that the Company has never made such a request ("appeal") in the course of this dispute and certainly not within the five or ten day periods referred to in the contract.

Because the Company (the dissatisfied party) has failed to timely make such a request, the Union is entitled to summary judgment.

The court notes its own propensity for using confusing language in the last paragraph of page 23 of the ruling dated October 25, 2002 (doc. 33). Accordingly that paragraph is hereby **DELETED** in its entirety, along with the accompanying note 5.

---

6. The undersigned will give odds that neither Louis L. Robein, Jr., Esq. nor William R. D'Armond, Esq. drafted this agreement.

## CONCLUSION

Accordingly, for the foregoing reasons, the motion to alter or amend the judgment (doc. 34) is hereby **DENIED**.